2024 IL App (1st) 232023-U

No. 1-23-2023B

FIRST DIVISION
January 16, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23400528201 |
| | ) | |
| JUAN ROMERO, | ) | Honorable |
| | ) | Teresa Molina-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**DRAFT ORDER**

*Held*:        We affirm the trial court's order of pretrial detention. The trial court could reasonably find that the State met its threshold burden under the Pretrial Fairness Act to prove by clear and convincing evidence that the "proof is evident or the presumption great" that defendant committed the charged offense, that defendant posed a real and present threat, and that no condition or combination of conditions could mitigate that threat. 725 ILCS 5/110-6.1(e) (West 2022). Defendant offers no support for his independent claim that he could waive the statutory 48-hour time frame for his detention hearing. 725 ILCS 5/110-6.1(c) (West 2022).

¶ 1        Defendant-appellant Juan Romero has filed a Pretrial Fairness Act Appeal under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023), from the circuit court's order entered on

October 13, 2023, which denied pretrial release. For the following reasons, we affirm the order of pretrial detention.

¶ 2                                              BACKGROUND

¶ 3        Defendant was charged with one count of aggravated vehicular hijacking while armed with a firearm (720 ILCS 5/18-4(a)(4) (West 2022)).[1] The charge stemmed from an incident on October 10, 2023, when defendant allegedly pointed a gun at the victim, Arturo Gonzalez, and took his vehicle.

¶ 4        On October 12, 2023, the State filed a petition for pretrial detention. On that date, defendant and his counsel appeared before the court in Maywood, Illinois. At that time, defense counsel indicated he was not ready to proceed with a pretrial detention hearing, because he had not yet reviewed discovery or interviewed members of defendant's family. Defense counsel asked for a continuance to October 17. The court responded that could not postpone the hearing more than 48 hours because the governing statute required the hearing to be held within 48 hours. Defense counsel responded that defendant had the right to waive the right to a hearing within 48 hours.

¶ 5        The court reviewed section 110-6.1(c)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(c)(2) (West 2022)) and interpreted it to mean that the court could not grant a continuance of more than 48 hours. The court observed that, as October 12, 2023 was a Thursday, a continuance of 48 hours would run into the weekend. The court thus agreed to

---

[1] Although not evident from the record, the State's response to defendant's notice of appeal indicates that on October 30, 2023, the State entered a *nolle prosequi* on the original charge and filed a superseding indictment containing eight counts.

continue the hearing to the following day, Friday, October 13, 2023. Defendant remained in custody.

¶ 6      The next day, counsel appeared before the court. The record reflects that defendant attended "via Zoom" while in custody. The court asked defense counsel if defendant was waiving his right to be present for the detention hearing, and counsel said he was not. The court then stated that if defendant wanted to be present, the hearing would need be held the following day, Saturday the 14th, on "26th Street" rather than the Maywood court. In response, defense counsel reiterated his position that defendant could waive his right to a hearing within 48 hours. Defense counsel stated he wished to argue the hearing personally and urged that defendant would be prejudiced if the hearing occurred "at a different courthouse by an attorney who is not prepared for it nearly as well." Thus, he requested to hold the hearing the following Monday, October 16.

¶ 7      The court responded that it could not grant that continuance. The court stated that under the language of section 110-6.1(c)(2): "if a continuance is requested and granted, which was done yesterday, the hearing shall be held within 48 hours of the defendant's first appearance." Thus, the court stated that it could only grant a continuance to the following day (Saturday, October 14), in which case it would be heard "heard at CBC tomorrow."[2] In response, defense counsel agreed to "proceed today."[3]

---

[2] The court was apparently referring to the Central Bond Court at 2600 South California Avenue in Chicago.

[3] Defense counsel informed the court that defendant waived his right to appear in person in order for the hearing to proceed on that day, since the "alternative is to go to a different courthouse" and have his case "litigated by an attorney that is going to be much less prepared."

¶ 8        The pretrial detention hearing thus proceeded on Friday, October 13. The State proffered that five offenders were arrested in this case, of which defendant (age 20) was the only adult. On October 10, 2023, the victim stopped his vehicle at a gas station in Cicero, Illinois. He went inside the station to prepay for gas. He then "started pumping gas and begin cleaning out the vehicle while he waited." As he did so, two individuals approached him. The State proffered:

> "The one in front closest to [the] victims is wearing a plain black hoody, blue jeans, and black sneakers with the tongue sticking up outside the hem of his jeans. He was later identified as defendant, Juan Romero. The other individual is wearing a beige hoody, gray jeans, and white sneakers. He was identified as juvenile number one."

Both offenders wore black masks covering the bottom halves of their faces, as well as blue latex gloves.

¶ 9        The State proffered that defendant pointed a handgun at the victim and demanded money. The victim showed the offenders his wallet and told them he had no cash. Defendant then demanded the victim's keys, which the victim surrendered. Defendant entered the driver's seat of the vehicle, and juvenile number one got into the front passenger seat.

¶ 10        The State proffered that the incident was recorded on surveillance video from the gas station. However, no video footage was shown at the pretrial detention hearing.

¶ 11        Cicero police subsequently observed the victim's vehicle at the intersection of 26th Street and Ogden Avenue. The vehicle did not stop when police activated their sirens. Police officers pursued the vehicle until its driver lost control. Four individuals, including defendant, fled from the driver's side of the vehicle. Juvenile number one was placed in custody at the scene.

¶ 12        After a brief foot pursuit, police found defendant in the backyard of a home, hiding among boxes. A ski mask and blue latex gloves were found where defendant had been hiding. According to the State's proffer, defendant "was wearing the same black hoody, jeans, and black sneakers that he was seen in the surveillance video at the gas station."

¶ 13        The State further proffered that the front driver's side window of the victim's vehicle was shattered. Inside the vehicle, officers recovered a loaded rifle, a nine millimeter magazine, and one spent nine millimeter shell casing. One of the juveniles, while in a police squad car, called his father and stated "this dude's stupid, he shot at police." Police believed that a shot was fired out of the driver's side window.

¶ 14        The State also proffered that the victim "participated in live lineups" but did not make a positive identification of defendant.

¶ 15        The State reported that defendant had two prior felony convictions, both for aggravated unlawful use of a weapon, from separate cases in 2021 and 2022.

¶ 16        Defendant's counsel argued that the State did not meet its statutory burden to show by "clear and convincing evidence" that the presumption is great or the proof evident that defendant committed aggravated vehicular hijacking. Counsel pointed out that the victim did not identify defendant in a lineup. Counsel also argued that other arrestees at least partially matched the description of the person who demanded the victim's keys:

> "As far as him matching a description of someone wearing a black sweater, black shoes, and blue jeans, there were *** five people arrested in relation to this, one of whom was also wearing a black sweater with blue jeans and black in color shoes, another one who was wearing a black and red sweater with black jeans and white and

black shoes, and then another one wearing a black sweater, red jeans, black shoes. So there's at least one person who also matched the description and then two who partially matched the description."

¶ 17　Defense counsel acknowledged that defendant was in the victim's vehicle. However, counsel argued that defendant gave a credible statement to police in which he explained that a friend picked him up in the vehicle and that he was "elsewhere when the car [was] stolen." According to defense counsel, defendant's statement indicated that his "friend t[ook] the cops on a wild goose chase."

¶ 18　Defense counsel also argued the State could not show that other conditions, such as electronic monitoring, could mitigate any threat posed by defendant. Counsel noted defendant had a "supportive family" and lived with his mother and stepfather, while his sister lived nearby. Counsel also stated that defendant had a one-year old son that he visited at least three times per week, and that defendant was employed full-time as a food packer.

¶ 19　Defendant's counsel called defendant's sister, who is eight years older than defendant. She testified defendant had spent time in the custody of the Illinois Department of Corrections (IDOC), after which he was paroled and moved to his mother's home. She testified that IDOC conducted monthly visits of the home but never found a gun or drugs. She also testified that defendant was on electronic monitoring for "about a month" without any problems.

¶ 20　Responding to the defense's argument regarding the offenders' description, the State said each of the five arrestees wore "distinctive clothing" "which makes it easy to identify which two actually approached the victim."[4] The two individuals who approached the victim were

---

[4] According to the State, "[j]uvenile number two was wearing red pants. No one in the video is seen wearing red pants. Juvenile number three was wearing jeans and a black hoody, but his black hoody

"defendant who was wearing an all-black hoody" and juvenile one. The State proffered that the surveillance video showed that "the guy in the black hoody, defendant, gets behind the wheel." The State's attorney concluded its argument by stating: "I know I haven't seen the video, counsel hasn't seen the video." Defense counsel then informed the court: "I don't have anything in discovery about one of the hoodies having a red hood on it."

¶ 21    The court proceeded to find the State met its burden to show by "clear and convincing evidence" that the "proof is evident and the presumption great" that defendant committed aggravated vehicular hijacking and that he posed a "real and present threat" to the safety of any person or the community. The court also found that less restrictive conditions "would not avoid a real and present threat to the safety of any person or persons or the community based on the facts of this case." The court noted that defendant's criminal history included two "gun offenses." Accordingly, the court ordered that defendant remain detained.

¶ 22    In his notice of appeal pursuant to Rule 604(h), defendant first claims that the State failed to meet its statutory burden to prove by "clear and convincing evidence" that "the proof is evident or the presumption great" that he committed the charged offense. See 725 ILCS 5/110-6.1(e)(1) (West 2022). He notes that "[t]he State proffered identification based on a video that was not available at the time of hearing." He points out that the victim did not identify him in a live lineup and argues that his exculpatory statement to police was "unimpeached" by the facts presented at the hearing. He acknowledges that he was one of five people in the vehicle, but he points out that "the hijacking was done by two individuals." He also notes that no

---

had a very large logo that covers the entire front of the hoody, and that is obviously not on the [surveillance] video. And finally, juvenile number four is wearing black jeans and a black hoody with a red hood and it says Chicago in big red letters across the front, and that is not what's depicted in the video, Judge."

firearms were recovered from him. Defendant also contends that, because he "was not sufficiently identified as one of the two gunmen," the State did not meet its burden to prove that he posed a real and present threat to the safety of any person or to the community. See 725 ILCS 5/110-6.1(e)(2) (West 2022)).

¶ 23    Defendant also claims that the State failed to prove that there were no conditions of pretrial release that could mitigate any threat. See 725 ILCS 5/110-6.1(e)(3) (West 2022) (State bears the burden of proving "by clear and convincing evidence" that "no condition or combination of conditions *** can mitigate (i) the real and present threat to the safety of any person or persons or the community *** or (ii) the defendant's willful flight ***.") He notes his sister's testimony that he had successfully been on electronic monitoring and parole without incident.

¶ 24    Separately, defendant avers in his notice of appeal that he was denied an opportunity for a fair hearing. He notes that (1) the court denied his October 12 request for a continuance after ruling he could not waive his right to a hearing within 48 hours, and (2) the next day, October 13, the court again refused his request to continue the case "past the initial 48 hour period." Finally, defendant also claims that "[a]fter the Court's ruling, Mr. Romero stated that he could not hear what was happening in court."

¶ 25    On December 8, 2023, defendant filed a notice informing this court that he will stand on the notice of appeal and will not submit a supporting memorandum pursuant to Rule 604(h).

¶ 26    On January 2, 2024, the State filed a response to the notice of appeal. The State maintains that an abuse of discretion standard of review applies to all of the court's findings. Insofar as defendant claims there was not clear and convincing evidence that he committed the offense, the State argues it met its statutory burden "because its proffer established that defendant was one of the assailants from the gas station video through matching clothes and being arrested

with the ski mask and gloves." The State avers that "the fact [defendant] was wearing a mask at the time of the offense explains why" the victim could not identify him in a lineup.

¶ 27    The State otherwise argues that the court did not abuse its discretion in finding that defendant posed a real and present threat and that no condition or combination of conditions could mitigate that threat. The State also maintains that the court properly applied the statutory provision governing the timing of the pretrial detention hearing when it denied any continuance longer than 48 hours.

¶ 28                                  ANALYSIS

¶ 29    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as recently amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act."[5] Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 30    "Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State." *People v. Stock*, 2023 IL (1st) 231753, ¶ 11; 725 ILCS 5/110-6.1(e) (West 2022). If the State files a petition requesting denial of pretrial release, "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person

_____

[5] Our supreme court has recognized that "[n]either name is official, as neither appears in the Illinois Compiled Statutes or public acts." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.

or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230968, ¶ 7; 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 31    As the State points out, appellate decisions conflict as to the precise standard of review to be applied to the trial court's determination that the State proved each of section 110-6.1(e)'s threshold requirements by "clear and convincing evidence." 725 ILCS 5/110-6.1(e) (West 2022). Certain decisions (including at least one from the First District) have held that an abuse of discretion standard of review applies to these findings. See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (holding that the abuse of discretion standard applies to review of the trial court's findings that State proved by clear and convincing evidence that defendant posed a real and present threat that could not be mitigated by other conditions); *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11 (when a defendant claims the State failed to fulfill its burden under the Act by "clear and convincing evidence," "we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion.").

¶ 32    Other appellate decisions have applied the "manifest weight of the evidence" standard of review to the trial court's findings as to whether the State proved the requirements of section 110-6.1(e) by clear and convincing evidence. See, e.g., *Stock*, 2023 IL App (1st) 231753, ¶¶ 12-14 (applying manifest weight standard to court's findings that "proof was evident or the presumption was great" that defendant committed offense and that defendant posed a real and present threat); *People v. Hernandez*, 2023 IL App (2d) 230361-U, ¶ 21 ("We review under the manifest-weight-of-the-evidence-standard the trial court's factual findings regarding whether the State presented clear and convincing evidence that a qualifying offense has been committed, that mandatory conditions of release would fail to protect any person or the community, or that no condition or combination of conditions can mitigate the real and present

threat ***."). Some decisions have described the standard of review as "twofold", meaning the trial court's factual findings are reviewed under the manifest weight standard, but its ultimate detention decision is reviewed for an abuse of discretion. See, e.g., *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (applying manifest weight standard to trial court's factual findings that the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community or that defendant has a high likelihood of willful flight.)

¶ 33     We find the twofold approach is well-reasoned. We keep in mind that section 110-6.1 of the Code requires the State to prove by "clear and convincing evidence" that "the proof is evident or the presumption great" that the defendant committed a qualifying offense, that defendant "poses a real and present threat to the safety of any person or persons or the community," and that no condition or combination of conditions can mitigate the threat. 725 ILCS 5/110-6.1(e) (West 2022). Thus, we think it is proper to review factual findings under the manifest weight of the evidence standard.  However, "we review for an abuse of discretion the trial court's ultimate determination regarding pretrial release." *Trottier*, 2023 IL App (2d) 230317, ¶ 13 (describing "twofold" standard of review).

¶ 34     In any event, we would reach the same result under either the manifest weight or abuse of discretion standard. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). An abuse of discretion occurs when the decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the trial court. *People v. Simmons*,

2019 IL App (1st) 191253, ¶ 9. After reviewing the record, we conclude that the trial court acted reasonably, and the defendant's claims of error lack merit.

¶ 35    First, we find that the State's proffer was sufficient for the trial court to reasonably determine that the State met its burden to prove by "clear and convincing evidence" that the "proof is evident or the presumption great" that the defendant committed the charged qualifying offense. 725 ILCS 5/110-6.1(e)(2) (West 2022). Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; see also *Stock*, 2023 IL App (1st) 231753, ¶ 12 ("Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.)).

¶ 36    We recognize that the State's proffer did not include an eyewitness identification of defendant, which certainly would have made its case stronger. Nonetheless, the State's proffer included sufficient identifying information for the court to reasonably find the "proof is evident" or the "presumption great" that defendant confronted the victim with a gun before taking the vehicle.

¶ 37    The State proffered and defendant acknowledged that he was one of the five individuals who fled from the stolen vehicle after a police chase. Although the State indicated that only two of those individuals committed the vehicular hijacking at the gas station, the State proffered that each of the five arrestees wore distinctive clothing that distinguished them from each other. More specifically, the State proffered that defendant's clothing (a black hoody, blue jeans and black sneakers) matched that of the offender who pointed a gun at the victim in

the gas station surveillance video.[6] Significantly, we note that the description of the offenders went beyond their hoodies, jeans and sneakers. The State further proffered that the two carjackers wore masks and blue latex gloves, and that a ski mask and blue latex gloves were located where defendant was found hiding from police. Given this proffer, the trial court could reasonably find the proof was evident or the presumption great that defendant committed the charged offense. 725 ILCS 5/110-6.1(e)(1) (West 2022). That is, this finding was not against the manifest weight of the evidence.

¶ 38     We similarly conclude that the court reasonably found the State met its burden to show by clear and convincing evidence that defendant "poses a real and present threat to the safety of or any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(2) (West 2022). The Code permits the court to consider various factors in assessing whether the defendant poses such a threat, including the nature and circumstances of any offense charged and the defendant's history and characteristics. 725 ILCS 5/110-6.1(g) (West 2022). Defendant claims in his notice of appeal that he could not be deemed to pose a real and present threat because he was "not sufficiently identified." However, as discussed above, the State's proffer was sufficient for the trial court to find the proof was evident that defendant threatened the victim with a firearm at a gas station before taking the victim's vehicle. Clearly, those acts posed a threat of harm to the victim and anyone else nearby. Moreover, the State's proffer suggested that defendant may have discharged a firearm while attempting to flee from police. In addition, the State proffered that defendant's criminal history

---

[6] Although the State did not produce the videotape at the hearing, it was not required to do so. Section 110-6.1 of the Code specifically contemplates that the State may proceed by proffer. See 725 ILCS 5/110-6.1(f)(2) (West 2022) ("The State or defendant may present evidence at the hearing by way of proffer based upon reliable information.")

included two prior offenses involving firearms. Given this, the trial court could reasonably find that defendant posed a "real and present threat" to the victim and the community. We thus conclude that this finding was also not against the manifest weight of the evidence.

¶ 39     Likewise, the court could reasonably conclude that the State met its separate statutory burden to prove that "no condition or combination of conditions" could mitigate the real and present threat posed by defendant. 725 ILCS 5/110-6.1(e)(3) (West 2022). To challenge this finding, defendant points out his sister's testimony that he had previously complied with parole conditions and had successfully completed a period of electronic monitoring. Yet even assuming the truth of that testimony, the facts of this case—an armed carjacking in a public place—were such that the trial court could reasonably conclude that pretrial detention was necessary to mitigate the threat posed by defendant to the community. This is especially so, since the defendant's two prior convictions apparently did not deter him from committing another crime involving a firearm. Thus, this finding that the State met this requirement was also not against the manifest weight of the evidence.

¶ 40     Separately, we find no merit to defendant's suggestion that he was denied a fair hearing because the trial court denied his counsel's requests to postpone the detention hearing to a date more than 48 hours past his initial appearance. As the trial court pointed out, section 110-6.1(c)(2) of the Code states that "[i]f a continuance is requested and granted, the hearing *shall be held* within 48 hours of the defendant's first appearance if the defendant is charged with *** a Class X, Class 1, Class 2, or Class 3 felony." (Emphasis added.) 725 ILCS 5/110-6.1(c)(2) (West 2022). In his notice of appeal, defendant suggests he was entitled to waive his right to a hearing within 48 hours. However, he cites no supporting authority and offers no legal argument. This court is "entitled to have the issues on appeal clearly defined with

pertinent authority cited and a cohesive legal argument presented." *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88 (unsupported claim of ineffective assistance of counsel was forfeited); see also *Cholipski v. Bovis Lend Lease, Inc.,* 2014 IL App (1st) 132842, ¶ 36 (appellate court need not consider arguments made without citation to authority or legal argument). This court is "not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Macias*, 2015 IL App (1st) 132039, ¶ 88*.* Accordingly, defendant's claim that he could waive the 48-hour time frame set forth in section 110-6.1(c)(2) is forfeited and we need not consider it.

¶ 41　　Finally, we note there is nothing in the record to support the assertion in the notice of appeal that "[a]fter the Court's ruling, Mr. Romero stated that he could not hear what was happening in court." To the contrary, the record reflects that at the outset of the hearing, the trial court asked defendant if he could hear the court, and the defendant answered affirmatively.

¶ 42　　In summary, we reject each of the claims of error identified in the notice of appeal. We conclude that the trial court's findings were not against the manifest weight of the evidence, and its pretrial detention decision was not an abuse of discretion.

¶ 43　　　　　　　　　　　　　　　　　CONCLUSION

¶ 44　　For the foregoing reasons, we affirm the October 13, 2013 order denying defendant pretrial release.

¶ 45　　Affirmed.